## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ROBERT BACON and<br>EAST COBB SPINE &<br>SPORT CHIROPRACTIC, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>HAILEY RANDALL,<br><br>        Defendant. | CIVIL FILE<br>ACTION NO. _____ |

## **COMPLAINT**

1.    Plaintiff Robert Bacon ("Dr. Bacon") and East Cobb Spine & Sport Chiropractic, LLC (the "Company," together with Dr. Bacon, the "Bacon Parties") bring this action against Defendant Hailey Randall ("Dr. Randall") seeking to recover compensatory monetary damages in a principal amount exceeding $75,000, plus punitive damages, attorney's fees, legal expenses, and costs of court, with all of the foregoing damages arising from injuries sustained in the State of Georgia, which were caused by the actions of Dr. Randall within the State of Georgia, including defamatory statements made to third parties and the financial harm caused to Dr. Bacon therefrom.

## **JURISDICTION AND VENUE**

1

2.     The court has jurisdiction over Dr. Bacon's claims pursuant to 28 U.S.C. § 1332.

3.     Subject matter is proper on diversity grounds, as complete diversity exists between the parties and the amount in controversy exceeds $75,000.

4.     The Court has personal jurisdiction over Dr. Randall, as she has sufficient contacts with the forum state, Georgia. Until recently, Dr. Randall lived in Georgia and worked in Alpharetta, Georgia as a chiropractor. Additionally, the defamatory statements made by Dr. Randall were made while she resided in Georgia to other individuals in Georgia. Those defamatory statement injured the Bacon Parties in Georgia.

5.     Venue is appropriate in the Northern District of Georgia because a substantial part of the events giving rise to the claims occurred within this district. *See* 28 U.S.C. § 1391(b)(2). Specifically, Dr. Bacon resides in this district, the Company has its principal place of business, registered agent, and operations in this district, and the conduct of Dr. Randall causing the injuries to the Bacon Parties occurred in this district.

## **PARTIES**

6.     Dr. Bacon is an individual resident of the State of Georgia.

7.     The Company is a Georgia entity operating and registered to do business in the State of Georgia. All members of the Company are residents of the State of Georgia.

8.     Dr. Randall is an individual residing in the State of North Carolina and may be served wherever she may be located. Upon information and belief, Dr. Randall currently resides at 14 Surrey Run, Asheville, North Carolina 28803. Dr. Randall also currently works at Comprehensive Chiropractic and Functional Medicine, which is located at 1218 Hendersonville Road, Asheville, North Carolina 28803.

## FACTUAL BACKGROUND

9.     Dr. Bacon is the owner and operator of the Company.

10.     The Bacon Parties were affiliated with Life University, a private university focused on training chiropractors, through Life University's PEAK clinical program.

11.     The PEAK clinical program allows Life University students to complete their clinic requirements for Life University as student interns under the supervision and direction of an off-campus doctor.

12.     These off-campus doctors, such as Dr. Bacon, also help the PEAK clinical program interns make the transition from school to practice, meaning that the student interns not only get hands-on chiropractic experience, but also learn how to operate a chiropractic practice from a business perspective.

13.     In October 2022, Dr. Randall began working as a PEAK clinical program student intern with the Bacon Parties, along with other student interns from Life University.

14.     The student interns in the PEAK clinical program at the Company engaged in both supervised chiropractic work—including the Total Body Assessment club (the "TBA"), where the student interns would perform chiropractic adjustments on other consenting student interns—and non-chiropractic work, such as learning about business development by assisting in aspects of the business such as marketing.

15.     From October 2022 to January 2023, Dr. Randall was supervised by Dr. Bacon.

16.     From January 2023 to April 2023, Dr. Randall was supervised by Dr. Sarah Wilkie, another chiropractor employed by the Company.

17.     Towards the end of Dr. Randall's internship with the Bacon Parties, Dr. Bacon and Dr. Randall agreed on a business relationship where Dr. Bacon would assist Dr. Randall with opening a chiropractic office.

18.     Dr. Randall graduated from Life University of April 3, 2023 and, before receiving her chiropractor's license, began working for the Company performing non-chiropractic tasks, such as nutritional consults, creating social media posts, and helping with front-desk activities as needed, in exchange for compensation of $500 per week.

19.     On April 11, 2023, Dr. Randall signed a *Confidentiality and Non-Disclosure Policy* (the "Confidentiality Agreement") with the Company. A true and correct copy of the Confidentiality Agreement is attached hereto as Exhibit "A."

20.     The purpose of the Confidentiality Agreement "is to ensure that each employee and business associate of [the Company] is aware of the importance of confidentiality and the significant consequences that will result from violation of this Policy by the unauthorized disclosure of sensitive and confidential matters related to [the Company]" and "to put in writing the moral, ethical and legal commitment to maintaining the highest level of integrity and confidentiality as it pertains to private, secret, sensitive or confidential information, matters or issues (restricted information or material) of [the company] whose employees . . . may learn as a result of association or employment with [the Company]." *Id.* ¶ II.

21.     The Confidentiality Agreement restricts Dr. Randall's use of information while working with the Bacon Parties and prevents Dr. Randall from using that information afterwards.

22.     In that regard, the Confidentiality Agreement states: "Restricted information shall include, but not be limited to, ***all information***, matters and issues, whether know to the public or not, ***that would be considered private, secret, or confidential*** . . . ." *Id.* ¶ III (emphasis supplied).

23.     On April 19, 2023, Dr. Randall participated in running the TBA, where Dr. Bacon instructed her to demonstrate chiropractic setups but not perform chiropractic adjustments.

24.     Despite being instructed not to perform chiropractic adjustments, Dr. Randall performed chiropractic adjustments at that time.

25.     Dr. Bacon reprimanded Dr. Randall for performing those chiropractic adjustments without appropriate supervision from a licensed chiropractor.

26.     On April 23, 2023, Dr. Randall and Dr. Bacon were scheduled to have a meeting to discuss the details of setting up her new office location.

27.     Dr. Randall arrived to the meeting more than an hour late, without informing Dr. Bacon that she would be late, and Dr. Bacon informed her that such behavior was unacceptable.

28.     On April 30, 2023, Dr. Randall skipped another scheduled meeting with Dr. Bacon to discuss the details of setting up the new office location so she could attend the Taylor Swift concert in downtown Atlanta.

29.     On May 1, 2023, Dr. Randall went to work, but while at the Company's office, video footage showed that she spent the vast majority of her time in her office with her head on her desk, apparently recovering from being out for the concert and not being up to working. Other student interns corroborated Dr. Randall's behavior.

30.     On May 2, 2023, Dr. Randall sent Dr. Bacon a text informing Dr. Bacon that she was going to work somewhere else as she had found a new job opportunity. After this date, Dr. Randall did not return to return to the Company for work.

31.     As part of preparing for Dr. Randall to begin working with Dr. Bacon, the Company spent $9,000.00, which included creating a new legal entity to operate the new chiropractic office location and hiring a consultant to assist with preparing that office for opening.

32.     On May 22, 2023, Dr. Randall contacted Life University and the Georgia Board of Chiropractic Examiners (the "Board") and made allegations against the Bacon Parties regarding the Bacon Parties and student interns in the PEAK clinical program.

33.     Specifically, Dr. Randall alleged that:

a. Dr. Bacon took frequent vacations and left students in the Company's office to perform adjustments without supervision in violation of PEAK clinical program rules and Georgia regulations governing chiropractors. These adjustments without supervision were allegedly on:

   i.   October 6, 7, 10, 20, 21, and 31, 2022;

   ii.  February 2, 3, 15, 16, and 17, 2023; and

   iii. March 3, 6, 7, 8, 16, and 17, 2023;

    b. Dr. Bacon intimidated Dr. Randall and other student interns and told Dr. Randall and those other student interns not to report violations of PEAK clinical program rules and Georgia regulations governing chiropractors; and

    c. Dr. Randall never took a single patient care note—attributing that failure to Dr. Bacon—that no notes were ever kept on patient care, and when patient care notes were requested, they were fabricated.

34. These statements were, and are, false.

35. On May 22, 2023, Dr. John Markham ("Dr. Markham"), the PEAK clinical program director at Life University, emailed Dr. Bacon and informed Dr. Bacon of the allegations made by Dr. Randall. A true and correct copy of Dr. Markham's May 22, 2023 email is attached hereto as Exhibit "B."

36. On May 23, 2023, Dr. Markham again emailed Dr. Bacon and stated, in part, that "[t]he complaints if true are serious. If they are not true they are also serious." A true and correct copy of Dr. Markham's May 23, 2023 email is attached hereto as Exhibit "C."

37. On June 15, 2023, Dr. Markham emailed Dr. Bacon and stated that "[w]e find no merit to the assertion that you left students in PEAK unsupervised. We find no merit to the assertion that you do not keep patient records." A true and correct copy of Dr. Markham's June 15, 2023 email is attached hereto as Exhibit "D."

38.     In the same email, Dr. Markham also stated that "[i]n an abundance of caution, we will place your PEAK status on Inactive until this matter is resolved. Your students scheduled for Summer quarter will need to find an alternate PEAK office." *Id.*

39.     On August 11, 2023, Dr. Markham sent Dr. Bacon a letter informing Dr. Bacon that he was being suspended from the PEAK clinical program. A true and correct copy of Dr. Markham's August 11, 2023 email is attached hereto as Exhibit "E."

40.     The letter further stated that "[a]s a recipient of the original complaint, the Georgia Board of Chiropractic Examiners has requested a copy of our report of findings and we have complied with that request." *Id.*

41.     Dr. Bacon made requests to both Life University and the Board for a copy of the report of findings but has not received a copy of the report of findings.

42.     As a result of Dr. Randall's false and malicious statements made to Life University and the Board, Dr. Bacon was indefinitely suspended from the PEAK clinical program.

43.     Because Dr. Bacon was suspended from the PEAK clinical program as a result of Dr. Randall's defamatory statements, the Bacon Parties were required to replace the work normally done by student interns with paid employees, resulting in substantial damages.

44.     Since Dr. Bacon's indefinite suspension from the PEAK clinical program, the Company has spent approximately $60,000.00 on salary for an additional chiropractor.

45.     Additionally, the Company has spent approximately $30,000.00 to pay a social media manager to handle the Company's social media presence previously handled by PEAK clinical program interns.

46.     On May 18, 2024, the Bacon Parties sent Dr. Randall a demand for retraction of her false and defamatory statements (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as Exhibit "F."

47.     The Bacon Parties did not receive a response to the Demand Letter prior to filing this suit.

## COUNT ONE: DEFAMATION PER SE
## PURSUANT TO O.C.G.A. §§ 51-5-1 AND 51-5-4

48.     The Bacon Parties incorporate by reference all preceding paragraphs of this Complaint as if fully restated herein.

49.     Dr. Randall made the false and defamatory statements regarding Dr. Bacon and described in this Complaint to Life University and the Board.

50.     Dr. Randall's statements were unprivileged communications to a third party.

51.     Dr. Randall made these statements with malicious intent to harm Dr. Bacon's professional occupation as a chiropractor.

52.     Dr. Randall's statements constitute defamation *per se*.

53.    Because Dr. Randall's statements were *per se* defamatory, special harm is assumed.

54.    Because Dr. Randall's statements were intended to harm Dr. Bacon's occupation as a chiropractor, those statements constitute defamation *per se*.

55.    Dr. Bacon's damages include the approximately $60,000.00 spent to hire an additional chiropractor and the approximately $30,000.00 spent to hire a social media manager because Life University suspended Dr. Bacon indefinitely from the PEAK clinical program.

## COUNT TWO: BREACH OF CONTRACT

56.    The Bacon Parties incorporate by reference paragraphs 1 through 47 of this Complaint as if fully set forth herein.

57.    Dr. Randall and the Company entered into the Confidentiality Agreement.

58.    By contacting Life University and the Board regarding the Company's operations and using information learned as an employee of the Company, Dr. Randall breached the Confidentiality Agreement.

59.    In breaching the Confidentiality Agreement, the Company has been damaged in an amount to be proven at trial, but of not less than $90,000 for employees to replace the lost work of PEAK clinical program interns.

## COUNT THREE: NEGLIGENT MISREPRESENTATION

60.    The Bacon Parties incorporate by reference paragraphs 1 through 47 of this Complaint as if fully set forth herein.

61.    Dr. Randall and Dr. Bacon, on behalf of the Company, agreed to enter into a business arrangement for Dr. Randall to open a new chiropractor's office with Dr. Bacon.

62.    Dr. Randall represented to Dr. Bacon that she would enter into a business relationship with him after she was a licensed chiropractor.

63.    Dr. Bacon reasonably relied on this representation and caused the Company to spend approximately $9,000.00 in preparation for Dr. Randall becoming a business partner with Dr. Bacon, including payments for a consultant and to set up a new company.

64.    Accordingly, the Company has been damaged in the principal amount of approximately $9,000.00 due to Dr. Randall's negligent misrepresentations.

## COUNT FOUR: PUNITIVE DAMAGES

65.    The Bacon Parties incorporate by reference paragraphs 1 through 47 of this Complaint as if fully set forth herein.

66.    Dr. Randall's actions have shown willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

67.    An award of punitive damages of not less than $400,000 should be entered to punish, penalize, or deter Dr. Randall from making defamatory statements in the future and making negligent misrepresentations to others.

## COUNT FIVE: ATTORNEYS' FEES AND COURT COSTS

68.    The Bacon Parties incorporate by reference paragraphs 1 through 47 of this Complaint as if fully set forth herein.

69.    Dr. Randall's actions have caused the Bacon Parties to incur legal fees in order to bring this lawsuit and to file this action to obtain relief from this Court.

70.    The Bacon Parties are entitled to recover their full legal fees, legal expenses, and costs of court.

WHEREFORE, the Bacon Parties pray that this Court:

i.    Issue Summons against Dr. Randall;

ii.    After trial, enter Judgment against Dr. Randall for the monetary damages outlined in this Complaint, plus costs of court, attorneys' fees, and such further consequential damages as may be suffered by the Bacon Parties;

iii.    Award punitive damages against Dr. Randall; and

iv.    Grant such other and further relief as the Court deems proper and just.

This 22nd day of May, 2024.

Respectfully submitted,

/s/ Michael D. Robl
Michael D. Robl
Georgia Bar No. 610905

/s/ Maxwell W. Bowen
Maxwell W. Bowen
Georgia Bar No. 719784

3754 Lavista Road
Suite 250
Tucker, Georgia 30084
Tel: (404) 373-5153 (Michael Robl)
Tel: (404) 373-5180 (Maxwell Bowen)
Fax: (404) 537-1761
michael@roblgroup.com
max@roblgroup.com
*Counsel for Plaintiffs*

# EXHIBIT A

## "CONFIDENTIALITY and NON-DISCLOSURE POLICY"

**East Cobb Spine & Sport Chiropractic, LLC**, recognizes the need for confidentiality between its employees and business associates in order to promote business and relationships with its clients. In order to adhere to such a policy, East Cobb Spine & Sport Chiropractic, LLC has adopted this "Confidentiality and Non-Disclosure Policy."

## I. BINDING POLICY

This policy is binding upon all persons or entities, including principals, agents, employees, independent contractors, consultants and professionals who work for the benefit of East Cobb Spine & Sport Chiropractic, LLC. This policy applies to newly hired employees and current employees as a condition of their employment. This policy, when written acceptance is evidenced, also shall be considered a binding agreement between East Cobb Spine & Sport Chiropractic, LLC and its independent contractors, advisors and consultants, as well as its employees, agents and principals.

## II. PURPOSE OF THIS POLICY

The purpose of this Policy is to ensure that each employee and business associate of East Cobb Spine & Sport Chiropractic, LLC is aware of the importance of confidentiality and the significant consequences that will result from violation of this Policy by the unauthorized disclosure of sensitive and confidential matters related to East Cobb Spine & Sport Chiropractic, LLC. In order to avoid costly and time-consuming litigation that could result from violations of this Policy, East Cobb Spine & Sport Chiropractic, LLC has established specific procedures that shall be followed when a violation within the scope of this Policy arises between East Cobb Spine & Sport Chiropractic, LLC and an employee, consultant or other business associate.

The purpose of this policy is to put in writing the moral, ethical and legal commitment to maintaining the highest level of integrity and confidentiality as it pertains to private, secret, sensitive or confidential information, matters or issues (restricted information or material) of East Cobb Spine & Sport Chiropractic, LLC, whose employees, independent contractors, advisors and consultants as well as their employees, agents and principals may learn as a result of association or employment with East Cobb Spine & Sport Chiropractic, LLC.

## III. RESTRICTED INFORMATION

Restricted information or material shall include, but not be limited to, all information, matters and issues, whether known to the public or not, that would be considered private, secret, or confidential by a reasonable person of normal sensibilities and sensitivity.

Such information or material shall include, but not be limited to: trade secrets; business and marketing plans; pricing; product development ideas; proprietary ideas; inventions; techniques; know-how; technical data or information; customer contacts, patient lists or patient information; records; personnel lists; financial records; research; data; conversations; and minutes, whether learned from a covered party or from any other source, public, private or otherwise.

## IV.  COVERED PARTIES

As of the effective date of this Policy: all newly hired employees and existing employees are covered by this Policy as a condition of employment; and all independent contractors, advisors and consultants, as well as their employees, agents and principals, also are "covered parties," as specified in the "Binding Policy" section above.

## V.  TERM

The obligation by all covered parties to maintain the confidentiality of restricted information or material as described in this Policy shall continue indefinitely after the effective date of this policy, including after termination of employment or other association with East Cobb Spine & Sport Chiropractic, LLC.

## VI.  REFUSAL TO ACKNOWLEDGE RELEASED OR EXPOSED RESTRICTED INFORMATION

We understand that some restricted information may be public knowledge or a matter of public policy and may be repeated by others who are not privy to or willing to acknowledge the confidential nature of such restricted information. In such cases, covered parties will use their best efforts to keep such restricted information from further publication or other public disclosure and, at the very least, refuse to discuss it or acknowledge it in any way.

## VII.  RETURN OF CONFIDENTIAL INFORMATION, DOCUMENTS AND RECORDS

A covered party who, in violation of this policy, possesses tangible items that contain or represent restricted information, shall immediately deliver, convey, or return all such documents and copies or items thereof, regardless of how or from what source such items were obtained, to East Cobb Spine & Sport Chiropractic, LLC or its representative.

## VIII.  INJUNCTIVE RELIEF

In the event a disclosure by a covered party of restricted information results or may result in imminent or irreparable harm to East Cobb Spine & Sport Chiropractic, LLC may, in addition to implementing

required dispute resolution procedures prescribed below, proceed concurrently, immediately and directly to a court of competent jurisdiction to seek temporary injunctive relief from the continued unauthorized disclosure of restricted information, according to local laws and rules of procedure.

In the event that violations of this policy may not result in damages that are immediately measurable or provable, East Cobb Spine & Sport Chiropractic, LLC shall be entitled to injunctive relief from an arbitrator, selected by the American Arbitration Association, upon reasonable proof of a violation of this policy.

East Cobb Spine & Sport Chiropractic, LLC shall also be entitled to a reasonable amount of monetary compensation or other such valuable compensatory relief from a covered party who violates this Policy as the arbitrator deems appropriate after taking all factors of the dispute into consideration. The procedure for initiating arbitration shall be followed as specified in Step 2 of the dispute resolution procedure below.

## DISPUTE RESOLUTION PROCESS

Except as stated above in the "Injunctive Relief" section, all parties agree that before East Cobb Spine & Sport Chiropractic, LLC may refer a dispute over an alleged violation of this "Confidentiality and Non-Disclosure Policy" by a covered party to the legal system, East Cobb Spine & Sport Chiropractic, LLC must first initiate and fully comply with the following progressive "Dispute Resolution Process," with the understanding that every effort shall be made to resolve the dispute in whole or in part as soon as possible.

## Step 1 - Informal Action

 East Cobb Spine & Sport Chiropractic, LLC shall first attempt to resolve disputes through internal problem-solving procedures, as follows:

a)   Within 24 hours of the first realization that a covered party has violated

this Policy, East Cobb Spine & Sport Chiropractic, LLC shall discuss the violation and the basis for it with the violating party or parties; and

b)   Within the succeeding 24-hour period, East Cobb Spine & Sport Chiropractic, LLC and the violating party shall make every effort to resolve the "Confidentiality and Non-Disclosure Policy" dispute and remedy any damage that may have occurred as a result of the covered party's violation of this Policy.

# Step 2 – Arbitration

If after "Informal Action," the "Confidentiality and Non-Disclosure Policy" dispute is unresolved, East Cobb Spine & Sport Chiropractic, LLC can request binding arbitration from the American Arbitration Association { www.adr.org & download Arbitration Request Form}. Binding arbitration involves the selection of an independent third party selected by AAA. The arbitrator decides the outcome of the case after all sides present arguments at private hearings, in accordance with AAA's "Model Employment Arbitration Procedures" in effect when written notice of claim is given.

The arbitrator shall apply the substantive law of the state in which the claim arose, or federal law, or both, as applicable to the claims asserted. The arbitrator may grant any remedy or relief the arbitrator deems just and equitable, including, but not limited to, any remedy or relief that would have been available if the matter had been heard in court. Though much less formal and far less costly than a court trial, arbitration is an orderly proceeding, governed by the rules of procedure and legal standards of conduct, with the arbitrator's decision binding on both parties.

Both parties shall share equally in the costs of the arbitration and the arbitrator. Each party shall pay his/her own other expenses, including attorneys' fees and/or expert testimony fees, if any.

 East Cobb Spine & Sport Chiropractic, LLC, upon reasonable proof of violation of this policy, shall be entitled to a reasonable amount of monetary compensation or other valuable compensatory relief from the party who violates this policy, as the arbitrator deems appropriate after taking into consideration of the fact and circumstances of the violations and the intent of the violator.

## IX. ATTORNEYS

Each party has the right to an attorney and may consult a lawyer or other advisor at any time during the "Confidentiality and Non-Disclosure Policy" process. If a party intends to use a lawyer or other representative, that party must notify the other party of the name, address and telephone number of its representative within ten (10) days of delivery of a request for arbitration or ten (10) days prior to the representative's participation in the process, whichever is earlier.

## X. DISCOVERY

All parties will have a fair opportunity to present their claim(s) during arbitration. Each party has the right to take the deposition of any relevant individuals as well as any expert witnesses designated by the other party. Each party has the right to request relevant documents from any party, at the cost of the requesting party. Either party may submit a request to the arbitrator for additional discovery, additional depositions or to resolve discovery disputes, including a claim regarding privileged documents or other pre-hearing disputes.

HR

## XI. WITNESSSES

In arbitration, each party has the right to subpoena witnesses and documents, present evidence and arguments, hear, and challenge the other party's evidence and witnesses.


## XII. REMEDIES

The arbitrator shall have the authority to award whatever remedies would have been available through state or federal court, including injunctive relief, when supported by credible, relevant evidence.

Effective date of the Confidentiality and Non-Disclosure Policy:

_4 | 11 | 2023_
(date)


For:  East Cobb Spine & Sport Chiropractic, LLC


_Dr. Hailey M. Randall_

(East Cobb Spine & Sport Chiropractic, LLC)

# ACKNOWLEDGEMENT OF RECEIPT OF `CONFIDENTIALITY AND NON-DISCLOSURE POLICY` BY EMPLOYEE OF East Cobb Spine & Sport Chiropractic, LLC

I acknowledge that I have received a copy of the *Confidentiality and Non-Disclosure Policy* relating to East Cobb Spine & Sport Chiropractic, LLC. I also understand that this becomes effective on the date that the acknowledgement is signed. I understand that compliance with this policy is a condition of my employment or continued employment with East Cobb Spine & Sport Chiropractic, LLC.

I understand that this policy does not, however, in any way alter the "at will" status of my employment with East Cobb Spine & Sport Chiropractic, LLC, which, unless otherwise agreed upon by written contract, is not for a fixed term or definite period and may be terminated at the will of myself or East Cobb Spine & Sport Chiropractic, LLC with or without notice.

Date: 4/11/2023

Dr. Hailey M. Randall
(Printed Name)

Dr. Hailey M. Randall
(Signature of Employee / Business associates)

HR

# ACKNOWLEDGEMENT AND ACCEPTANCE OF
# `CONFIDENTIALITY AND NON-DISCLOSURE POLICY
# BY INDEPENDENT BUSINESS ASSOCIATE
# OF East Cobb Spine & Sport Chiropractic, LLC.

I acknowledge that I have received a copy of the *Confidentiality and Non-Disclosure Policy* relating to East Cobb Spine & Sport Chiropractic, LLC.  I accept this policy as a binding agreement between East Cobb Spine & Sport Chiropractic, LLC and myself, my principals, employees and agents.

If a binding agreement currently exists or exists in the future between myself, my principals, agents or employees and East Cobb Spine & Sport Chiropractic, LLC, it is further agreed that this agreement shall not alter the terms of the prior or subsequent agreement but rather be interpreted to supplement that agreement, providing provisions of clarification for matters that are included in the subject matter of this agreement.

Date: 4 | 11 | 2023

*Dr. Hailey M. Randall*
(Signature)

*Dr. Hailey M. Randall*
(Name Printed)

For: East Cobb Spine & Sport Chiropractic, LLC

HR

# Exhibit 1— Mediation Request Form
## American Arbitration Association www.adr.org

Date: __4/11/2023_____

The named parties hereby submit the following dispute for resolution under the _____ Rules* of the American Arbitration Association.

Procedure Selected: Mediation

Nature of Dispute (Attach additional sheets if necessary):

The Claim or Relief Sought (the Amount, if Any):

Type of Business: Claimant  Respondent

Place of Hearing:

We agree that, if arbitration is selected, we will abide by and perform any award rendered hereunder and that a judgment may be entered on the award.

## To Be Completed by the Parties

Name of Party_____     Name of Party_____

Address_____     Address_____

City, State, and ZIP Code_____     City, State, ZIP Code_____

Party's Attorney or Representative_____     Party's Attorney / Representative_____

Name of Firm (if applicable) _____     Name of Firm (applicable)_____

Address_____     Address_____

City, State, and ZIP Code_____     City, State, & ZIP Code_____

Phone_____     Phone_____

Fax_____     Fax_____

Email_____     Email_____


_____     _____
Signed (may be signed by a representative) Title     Signed (may be signed by a representative) Title

Please file two copies with the AAA

# Exhibit 2 — Mediation Request Form

## American Arbitration Association

Date: _4/11/2023_____

The named parties hereby submit the following dispute for resolution under the _____
Rules* of the American Arbitration Association.

Procedure Selected: Mediation

Nature of Dispute (Attach additional sheets if necessary):

The Claim or Relief Sought (the Amount, if Any):

Type of Business: Claimant  Respondent

Place of Hearing:

We agree that, if arbitration is selected, we will abide by and perform any award rendered
hereunder and that a judgment may be entered on the award.

## To Be Completed by the Parties

| | |
|---|---|
| Name of Party_____ | Name of Party_____ |
| Address_____ | Address_____ |
| City, State, and ZIP Code_____ | City, State, ZIP Code_____ |
| Party's Attorney or Representative_____ | Party's Attorney / Representative_____ |
| Name of Firm (if applicable) _____ | Name of Firm (if applicable)_____ |
| Address_____ | Address_____ |
| City, State, and ZIP Code_____ | City, State, ZIP Code_____ |
| Phone_____ | Phone_____ |
| Fax_____ | Fax_____ |
| Email_____ | Email_____ |
| _____ | _____ |
| Signed (may be signed by a representative) Title | Signed (may be signed by a representative) |

Please file two copies with the AAA.

# DIRECTORS' RESOLUTION BY WRITTEN CONSENT IN LIEU OF SPECIAL MEETING:

The undersigned, being all of the directors of East Cobb Spine & Sport Chiropractic, LLC, do hereby adopt, pursuant to applicable State laws governing our corporation, the following resolution:

*Whereas*, the five-step process to resolve disputes in the workplace, {based on the Alternative Resolution Dispute process}, and issues of legal rights in a fair, private, quick and economical way that avoids the slow and costly process of settling disagreements through the court system.

*Whereas*, East Cobb Spine & Sport Chiropractic, LLC desires to encourage and foster an atmosphere of trust and confidence in its employees and business associates. It is for this reason that we have decided to adopt both of these policies in our office. All parties must recognize the need for strict confidentiality in order to safeguard the proprietary and other business interests of East Cobb Spine & Sport Chiropractic, LLC, and the privacy of its customers, clients, patients and business associates.

It is therefore.

VOTED:  That the program policies hereinabove and presented to the Board is approved, and it is further

VOTED: That the Corporate Compliance officer and Director of the Clinic are appointed to be involved in the oversight, implementation, training, and amendment of these new policies.

IN WITNESS WHEREOF, I have hereto set my hand intending this consent and implementation of the program to be effective as of the date signed below.

Date: 4|11|2023

Dr. Marty M Randall

Owner of East Cobb Spine & Sport Chiropractic, LLC

(East Cobb Spine & Sport Chiropractic, LLC)

HR

# EXHIBIT B

# PEAK URGENT 



**Dr. John Markham**
to me ▾

Mon, May 22, 3:10 PM

Dr. Bacon,

A former PEAK student has submitted a complaint alleging that several PEAK imperatives were violated during their preceptorship in your office.
I would like your response to these allegations:

1. The doctor took frequent vacations (see list of dates below) and left the student in the office to perform adjustments without your supervision.
2. The student alleges that you intimidated them and told them not to report this violation to the school.
3. The student alleges they never took a single patient care note. Further they allege that no notes are ever kept on patient care and that when someone requested records they were fabricated at that time.
4. The student alleges that there are regular "club" meetings where students pay $25 to attend and they are allowed to adjust each other and no records are kept or consents signed.

The dates given for vacation are listed here:

October 6, 7, 10th 2022, October 20-21st 2023, October 31, 2022, March 6-8th, 2023, February 2-3rd, 2023, February 15-17th, 2023, February 23-24, 2023, March 3rd, 6th-8th, 2023, March 16 & 17th, 2023

I have asked your current students to let me know if they have experienced any of these situations.
It is likely based on this complaint that your students will be removed and you will be made inactive in PEAK while we investigate this further,
but I wanted to at least give you a chance to respond before any action is taken. Please respond to this email right away.

Respectfully,

John F. Markham DC

**Life University**
Director of PEAK
1415 Barclay Circle, Marietta, GA 30060

770-426-2980

# EXHIBIT C

From: **Dr. John Markham** <john.markham@life.edu>
Date: Tue, May 23, 2023 at 8:01 AM
Subject: PEAK Complaint
To: drbobbacon21@gmail.com <drbobbacon21@gmail.com>

Dr. Bacon,

Thank you for your reply. I would love to meet with you as soon as possible. I can visit for a few minutes this morning if you have a way to squeeze out a few minutes or perhaps tomorrow morning?

The complaints if true are serious. If they are not true they are also serious. I just need to know what is true. I appreciate your willingness to help me sort this out.

Let me know what works best.

Dr. Markham

# EXHIBIT D

From: **Dr. John Markham** <john.markham@life.edu>
Date: Thu, Jun 15, 2023 at 12:48 PM
Subject: Regarding Complaint
To: Dr. Bob Bacon <drbobbacon21@gmail.com>
Cc: Dr. Michael Clusserath <michael.clusserath@life.edu>


Dr. Bacon,


I had a meeting this morning with Dr. Clusserath, the Dean of the College of Chiropractic, regarding the complaints made against you. He would like to schedule an on campus meeting with you and I and Dr. Sean Finnegan, the Director of C-HOP Clinic, during the week of July 10 -14. Please let me know if there is a day and time that you prefer and I will organize the meeting.

We find no merit to the assertion that you left students in PEAK unsupervised. We find no merit to the assertion that you do not keep patient records.

The assertions that you hold club meetings for students where adjustment techniques are taught and practiced seems credible. In an abundance of caution, we will place your PEAK status on Inactive until this matter is resolved. Your students scheduled for Summer quarter will need to find an alternate PEAK office. I will be following up with them but wanted you to know.


Respectfully,


John F. Markham DC


**Life University**

Director of PEAK

1415 Barclay Circle, Marietta, GA 30060


770-426-2980

# EXHIBIT E



11 August 2023

 Dear Dr. Bacon,

We have completed our investigation of the complaints made by your former PEAK intern on May 22, 2023. The findings have been reviewed by the Dean and the other Clinic Directors.

Based on the results of that investigation, we have suspended you from the PEAK program. There appears to be credible evidence that you allowed students to perform adjustments in the "club" meetings, including even lower quarter students. In addition several former interns indicated they did not routinely take daily soap notes. The question of student interns being left unsupervised was not resolved.

As a recipient of the original complaint, the Georgia Board of Chiropractic Examiners has requested a copy of our report of findings and we have complied with that request.

Respectfully,

*John F. Markham DC*

John Markham DC
Director of PEAK

# EXHIBIT F

## ROBL LAW GROUP LLC
### A t t o r n e y s   a t   L a w

May 17, 2024

**Via U.S. Mail and E-Mail**

Hailey Randall
Comprehensive Chiropractic and Functional Medicine
1218 Hendersonville Road
Asheville, North Carolina 28803
haileymrandall@yahoo.com
hailey.randall@student.life.edu

> RE:   Demand for retraction of statements made against Dr. Robert Bacon on May 22, 2023.

Dear Ms. Randall,

Our firm has been engaged to represent Dr. Robert Bacon ("Dr. Bacon") and his company East Cobb Spine & Sport Chiropractic, LLC (the "Company," together with Dr. Bacon, the "Bacon Parties") as to certain defamatory statements made by you on or about May 22, 2023. The Bacon Parties intend to file a lawsuit against you early next week unless you retract those statements by 5:00 p.m. on Monday, May 20, 2024.

## I.   A history of your relationship with the Bacon Parties.

We understand that while you were a student at Life University, you began working with the Bacon Parties as an intern as part of Life University's PEAK clinical program. Your internship with the Bacon Parties ran from October 2022 to March 2023, when you graduated from Life University. While an intern at the Company, you were supervised by Dr. Bacon for the first three (3) months of your internship and Dr. Sarah Wilkie for the final three (3) months. Towards the end of your internship, you and Dr. Bacon agreed on a business relationship where Dr. Bacon would assist you with opening a chiropractic office.

On April 3, 2023, after you graduated from Life University but before you received your chiropractor's license, you began working for the Company performing non-chiropractic tasks, such as performing nutritional consults, creating social media posts, and helping with front desk activities as needed. Your compensation for this work was $500 per week.

On April 11, 2023 you signed a *Confidentiality and Non-Disclosure Policy* (the "Confidentiality Agreement"), a copy of which is enclosed with this letter.

On April 19, 2023, you participated in running the Total Body Assessment ("TBA") club, where you were instructed to demonstrate setups but not perform adjustments. Nonetheless, it came to Dr. Bacon's attention later that you did perform chiropractic adjustments at that time.

**ROBL LAW GROUP LLC**
Attorneys at Law

The week of April 17, 2023 to April 21, 2023, you took the majority of the week off to complete your Orangetheory Fitness certification. Because you did not work in the office this week, you were not paid for the time you took off.

On April 23, 2023, you arrived more than an hour late, without informing Dr. Bacon you would be late, for a meeting with Dr. Bacon to discuss the details of setting up your new office location. Dr. Bacon informed you that such behavior was unacceptable.

On April 30, 2023, you skipped another scheduled meeting with Dr. Bacon to discuss the details of setting up your new office location to attend the Taylor Swift concert in downtown Atlanta.

On May 1, 2023, while you were at the Company's office, video footage showed that you spent the vast majority of your time in your office with your head on your desk, apparently recovering from being out for the concert and not being up to working.

On May 2, 2023, you sent Dr. Bacon a text message informing him that you were going to work somewhere else as you had found a new job opportunity. After this date, you did not come back to the Company for work.

After your departure date, we are now aware that you reached out to various individuals to try to obtain information in order to make claims maliciously against Dr. Bacon.

On May 22, 2023, you made serious allegations to Life University regarding Dr. Bacon's actions during your time in the PEAK program. Based on information from Life University, we understand that you made similar allegations to the Georgia Board of Chiropractic Examiners (the "Board") on the same date.

**II.     You made false statements to Life University and the Board regarding the Bacon Parties.**

The false statements made to Life University, and to the Board, against the Bacon Parties included the following:

1) that Dr. Bacon took frequent vacations and left students in the Company's office to perform adjustments without Dr. Bacon's supervision, in violation of PEAK program rules and Georgia regulations governing chiropractors. These vacations were allegedly taken on:

   a. October 6, 7, 10, 20, 21, and 31, 2022,
   b. February 2, 3, 15, 16, and 17, 2023, and
   c. March 3, 6, 7, 8, 16, and 17, 2023;

2) that Dr. Bacon intimidated you and other students and told you and those other students not to report violations of PEAK program rules and Georgia regulations governing chiropractors; and

3) that Dr. Bacon never took a single patient care note, that no notes are ever kept on patient care, and when patient care notes were requested, they were fabricated.

These statements were, and are, false. First, although you alleged that Dr. Bacon was not present to oversee interns on numerous dates, Dr. Bacon was not the PEAK program supervisor at issue for any of the February or March dates you referenced. To the contrary, he was only the PEAK program supervisor during the October dates you cited, and for all but one of those dates, Dr. Wilkie was observing, so interns were not left unsupervised. One the one other occasion, Dr. Bacon was present in person. There was never a time that interns were left without the supervision of a licensed chiropractor and PEAK doctor. Those are simply false statements.

Second, although you allege that Dr. Bacon intimidated you and told you not to report violations of PEAK program rules and Georgia regulations governing chiropractors, you gave Dr. Bacon and his practice a glowing recommendation in your video-taped exit interview. I understand that Dr. Bacon was not present when you recorded the exit interview, nor were you in any way compelled to give the exit interview. I have watched that video, and it would make excellent evidence in a trial, and fully debunk the claim that you thought anything was improper. Indeed, you accepted an offer to work for the Bacon Parties.

Finally, although you claim that Dr. Bacon never took a single patient care note, that no notes are ever kept on patient care, and when patient care notes were requested, they were fabricated, that is entirely false. In a lawsuit we could produce patient care notes.

**III.    The Bacon Parties have been damaged significantly by your misconduct.**

Because of your defamatory statements, Dr. Bacon was placed on indefinite suspension of the PEAK program. That indefinite suspension required the Bacon Parties to replace work normally done by student interns with an additional paid chiropractor and paid social media manager. The Company has spent approximately $60,000 on salary for the additional chiropractor and approximately $30,000 to pay the social media manager.

Additionally, the Bacon Parties paid approximately $9,000 in preparing for your expected start, including setting up a new legal entity, hiring professional consultants to assist with that expansion, and other expenses. When you unexpectedly quit your position with the Company, the Bacon Parties were out that $9,000.

The Bacon Parties have also incurred thousands of dollars of legal fees to address the damage caused by your false statements.

Accordingly, the Bacon Parties intend to seek damages of not less than $100,000 for actual damages caused by your false and defamatory statements.

The Bacon Parties also intend to seek punitive damages, which are available for defamation claims. The U.S. Supreme Court has held that it is appropriate to seek punitive damages of up to four times the amount of compensatory damages. *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23, 111 S. Ct. 1032, 1046, 113 L. Ed. 2d 1 (1991) (finding punitive damages that were four (4) times the amount of compensatory damages were proper and constitutional). Accordingly, in any suit or arbitration, Dr.

Bacon intends to seek punitive damages of not less than $500,000 for your false and defamatory statements, comprised of:

> $60,000 on salary for the additional chiropractor to replace lost PEAK intern time;
> $30,000 to pay the social media manager to replace lost PEAK intern time;
> $9,000 in preparing for your expected start (legal entity filing, hiring consultants);
> $3,000 legal fees (continuing to grow) to address defamation and breach of contract;
> $400,000 as punitive damages, calculated as four times compensatory damages.

Dr. Bacon also intends to seek his attorneys' fees and costs of court if he is required to file suit. Such fees and costs can be appropriately assessed against a party under Georgia law if requested as part of damages.

## IV.    The Bacon Parties intend to file legal action by May 22, 2024 for defamation and breach of contract.

Your false statements constitute defamation under Georgia law. Additionally, these statements violate the Confidentiality Agreement. Accordingly, the Bacon Parties intend to file a legal action against you this coming week, by May 22, 2024, for defamation, breach of the Confidentiality Agreement, and other legal claims.

## A. Defamation action.

A defamation claim arises under Georgia law when the following four (4) facts exist:  (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm. *Boyd v. Disabled Am. Veterans*, 349 Ga. App. 351, 353, 826 S.E.2d 181 (2019).

However, a claimant need not prove harm by showing specific monetary damages when false statements are made that injure someone in his or her "trade, occupation or business", as such statements constitute slander *per se* (if oral) and libel *per se* (if written). *See S. Co. v. Hamburg*, 220 Ga. App. 834, 840, 470 S.E.2d 467 (1996) ("Statements which tend to injure one in his trade, occupation or business have been held to be libelous per se.") (quoting *Walker v. Sheehan*, 80 Ga. App. 606, 611, 56 S.E.2d 628 (1949)); *see also* O.C.G.A. § 51-5-4 ("(a) Slander or oral defamation consists in: . . . (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein . . . (b) . . . in the situations described in paragraphs (1) through (3) of subsection (a) of this Code section, damage is inferred.").

The statements you made as to Dr. Bacon were false and defamatory. They were made to both Life University and the Board, *i.e.*, they were published. You made the false and defamatory statements with malice and the intent to injure Dr. Bacon's profession as a chiropractor, *i.e.*, his "trade, occupation or business." Because the statements made were against Dr. Bacon's profession, special harm is assumed without further proof, as such statements constitute defamation *per se*.

**ROBL LAW GROUP LLC**

A t t o r n e y s   a t   L a w

Life University indicated that your statements had a bearing on Dr. Bacon's professional reputation. In email correspondence with Dr. John Markham, the director of the PEAK program, Life University indicated the truth or falsity of these allegations was serious to Life University. In fact, Life University suspended Dr. Bacon from the PEAK program while it investigated the allegations. It later exonerated Dr. Bacon by inviting him back to the PEAK program, but the damage had been done in numerous respects, including that the Bacon Parties lost the benefits of a year of the PEAK program.

I also want to impress the seriousness of this matter upon you from the perspective of Dr. Bacon. Your false and defamatory statements led to a formal investigation by the Board and a formal investigation by Life University. Dr. Bacon spent many sleepless nights concerned for his chiropractor's license and his career as a chiropractor. Dr. Bacon vehemently denies the false and defamatory allegations you made to Life University and the Board and fully intends to prove that those statements were false, including by taking legal action. Accordingly, the Bacon Parties may file suit in United States District Court for the Northern District of Georgia, asserting claims for breach of the Confidentiality Agreement, and for defamation under Georgia law, and for compensatory damages, punitive damages, legal fees.

**B. Breach of contract action.**

You entered into a binding contract with the Bacon Parties when you signed the Confidentiality Agreement. The agreement states that it "is binding" and "applies to newly hired employees and current employees" and "shall be considered a binding agreement…." (Confidentiality Agreement, ¶ II). That agreement restricts your use of information learned while working with the Bacon Parties, and prevents you from using that information afterward. Specifically, the contract provides: "Restricted information shall include, but not be limited to, ***all information***, matters and issues, whether know to the public or not, that would be considered private, secret, or confidential…." (Confidentiality Agreement, ¶ III; emphasis supplied).

The Confidentiality Agreement contains a dispute resolution process. The dispute resolution process permits the Company to institute binding arbitration procedures before the American Arbitration Association ("AAA") for violations of the restricted information provisions of the Confidentiality Agreement. Your allegations to Life University and the Board violated the restricted information provisions of the Confidentiality Agreement. Accordingly, arbitration is appropriate under these circumstances, for which the Confidentiality Agreement requires you to split the cost of the arbitration and arbitrator. The Bacon Parties may also request that the arbitrator hear their claim against you for your defamatory statements.

In accordance with Paragraph VIII of the Confidentiality Agreement, within 24 hours of notice, which is hereby given by this letter, you must "make every effort to resolve the 'Confidentiality and Non-Disclosure Policy' dispute and remedy any damage that may have occurred as a result of the covered party's violation of this Policy." This notice is being given to you prior to 5:00 p.m. on May 17, 2024; accordingly, you are required to respond no later than 5:00 p.m. on Monday, May 20, 2024 (giving you the benefit of the intervening weekend, which may not be required by law).

**ROBL LAW GROUP LLC**

A t t o r n e y s   a t   L a w

**V.      Preservation of documents and electronic data.**

Due to the imminently contemplated litigation, we hereby demand that you preserve all documents and electronic data (including emails, text messages, and social media posts) regarding statements you have made about Dr. Bacon and the matters referenced in this letter.

You may have sanctions imposed against you for spoliation of evidence if you delete, destroy, or allow documents or data to be lost through inaction (such as by failing to turn off period overwrite functions or delete on electronic devices). Such sanctions can range from being required to pay the Bacon Parties' legal fees for discovery of such matters, to having negative inferences drawn against you in litigation, or to a jury being instructed to construe facts against you, or even to the imposition of a default judgment against you.

Accordingly, you should immediately secure and preserve all documents and electronic data concerning these matters.

**VI.     Retraction demand.**

The Bacon Parties hereby demand that you retract your false and defamatory statements to Life University, the Board, and any other third parties to which you have made such statements orally or in writing. Pursuant to the Confidentiality Agreement, the Bacon Parties demand that such retraction is made within twenty-four (24) hours of receipt of this letter.

A retraction letter has been prepared and enclosed with this letter for your signature. If the retraction letter is not signed, scanned, and emailed back to the email address in the footer of this letter within twenty-four (24) hours, the Bacon Parties intend to take all steps necessary to preserve their rights. Those steps include the arbitration action and / or lawsuit described in this letter, and any other steps the Bacon Parties deem necessary. The original copy of the retraction letter should also be sent to my office address, which is also listed in the footer of this letter.

By signing and returning the retraction letter, you are also authorizing my firm and Dr. Bacon to send that letter to Life University, the Board, and any other third party that you made false statements to as to Dr. Bacon.

Cordially,

ROBL LAW GROUP LLC

Michael D. Robl, Esq.

Encl.
-Confidentiality and Non-Disclosure Policy; and
-Retraction letter

# ROBL LAW GROUP LLC
**A t t o r n e y s   a t   L a w**

Cc.
-Dr. Robert Bacon

May 20, 2024

To whom it may concern,

     My name is Hailey Randall. I am writing this letter regarding statements that I made on or around May 22, 2023 regarding Dr. Robert Bacon ("Dr. Bacon"). I communicated to Life University and the Georgia Board of Chiropractic Examiners that Dr. Bacon had not followed program rules of Life University's PEAK chiropractic internship / externship program and that Dr. Bacon had not followed Georgia's regulations governing chiropractors.

     Those statements were false and I am hereby retracting them in their entirety. To the extent any action was taken against Dr. Bacon, whether legal, professional, or otherwise, based on my false statements, such action should be rescinded and Dr. Bacon's record expunged.

     I am sorry for any damage my false statements may have had to Dr. Bacon and I am sending this letter in an effort to rectify such damage.

     I declare that the foregoing is true and accurate under penalty of perjury under the laws of the United States.

     Sincerely,


     Hailey Randall

          [Notarization unnecessary per 28 U.S.C. § 1746]